The next matter is number 22-1666, Dennis Jordan v. Kenneth Lizotte. At this time, would counsel for the appellant please come to the podium and introduce himself on the record. Good morning, Your Honors. Benjamin Brooks on behalf of Dennis Jordan. May it please the Court? I would reserve just one minute for rebuttal if necessary. Yes. So as you know, this is an appeal of the denial of a habeas petition. And I think what is compelling about this appeal is that there is a real possibility and a real risk that Dennis Jordan was misidentified as the shooter in this event. And as you know, this is a case where there was a group of young men who arrived at an after-hours party and there were several young men, and only two of them were involved in the shooting. And just in going through the briefs, I noticed that I didn't actually give you citations to the record about how many men arrived, but Newayer Lewis, the victim, testified that there were seven men. That's in the record appendix 1A at 202-204. And the bus driver also said seven men. That's in the record appendix 1A at 365. Clifton Lewis, who was Newayer's brother who came out later, said he saw 30 to 40 people outside at the time that the shooting occurred. And so this was this fast-moving, violent event. It was what we call a stranger ID. Mr. Jordan and Newayer Lewis, who was the person who identified him, had never met before that night. It's late at night. It's dark outside. And the prior encounter between these two strangers, before the action started and things got hectic and crazy, was really limited. So what you had was Aaron Hicks, who was one of the other bouncers, was checking people at the door. Newayer Lewis, the victim who makes the identification, is standing at the top of the stair, pat-frisking people. People are coming through the door. Newayer Lewis notices that there's some kerfuffle between Aaron Hicks and two men, one of whom he later identifies as Dennis Jordan and the other whom he identifies as a guy named Daz, who's wearing a tan jogging suit. And what's significant about that is they never actually get to Newayer Lewis. They never actually reach him. He doesn't pat-frisk them. He doesn't have any face-to-face confrontation with him. He just notices that they're having some sort of kerfuffle with Aaron Hicks. And he also concedes, which is important, that his focus at that time, apart from the people that he's responsible for pat-frisking, is on the man in the tan jogging suit, who he identifies later as Daz, not Dennis Jordan. And the only thing that he really sees about Mr. Jordan is that he's wearing a jacket that he found distinctive. I appreciate these facts obviously really matter, and I don't mean to cut you off, but really what your argument needs to focus on is the MAC Court's finding regarding that not giving the instruction was not prejudicial. Right. And so it's such a fact-based inquiry. The reason that it wasn't reasonable is because this was one of these cases where, as a factual matter, the identification was so weak and so ripe for an instruction from the court as to what the factors were that the jury ought to be considering, that it was unreasonable for the Massachusetts court to conclude otherwise. And just to get back to those quick facts, so that's a very brief encounter. He goes outside, and then immediately Aaron Hicks is saying, find the gun. There's a sort of crisis. Daz, the man in the tan jogging suit, is standing right in front of him. And very shortly after that, Daz starts firing, and the warrior says he turns around and runs back inside. He gets hit in the back, and he's in a coma for three days. It's very unclear how he had any opportunity to identify the other shooter, Dennis Jordan, at all. And he does say he got outside and he saw Jordan and Hicks struggling, but then he admits that he didn't see the face. The only thing he recognized was the jacket. He says that through – or the detective gives testimony to that. So this is one of these cases where clearly – So following up on Judge Monte Carlo's question, don't you need to argue that as a matter of law, it was clear that the judge's instruction was deficient constitutionally? Well, it was deficient because the judge gave no instruction on identification at all. The only thing that the judge gave an instruction on was sort of general credibility and reasonable doubt. And the problem with the Massachusetts Appeals Court decision is that they essentially said, well, yeah, that was good enough. Even though there wasn't a specific eyewitness identification instruction, even though there wasn't a specific instruction on the possibility of an honest but mistaken identification, the general instructions on witness credibility were enough. What is the law of the Supreme Court that made it unreasonable for the Mass Appellate Court to rely on the general credibility instruction? What is that decision that would have required more? So the decision is that if the state court requires an instruction and then defense counsel fails to request it or it's failed to give, then that can be grounds for ineffective assistance of counsel. I don't know that there is a specific federal case or a Supreme Court case that says you have to give a specific eyewitness instruction, although there are plenty of cases that suggest that because they say one of the great defenses against sort of unnecessarily suggestive identifications is the instruction that the jury has to pay close attention, and these specific eyewitness instructions achieve that. So to be precise, you're not saying that we should review the decision not to give the instruction, but rather the claimed constitutional error here is trial counsel's failure to take that position. I mean, this is an ineffective assistance claim, right, because there was no request for it. And we would have to find that no reasonable counsel in that situation, et cetera, under Strickland. Right. And, I mean, this was a case where the entire defense was identification, right, and that was what was argued, and counsel failed to ask for the instruction that was basically at the very heart of his defense. And to trial counsel's credit, the affidavit that they filed when we litigated this motion for new trial, he said that was a mistake. I didn't have any strategic reason for not requesting that instruction. It was an oversight on my part. And the cases cited in the brief say if there is an instruction that is required under the state law, it can be grounds for an ineffective assistance claim. It can be grounds for a habeas review if there is a failure to request that. And that is the situation that we have here. And the reason that the Massachusetts Court decision was unreasonable along those lines is because there is the case, Commonwealth v. Navarro, where the Massachusetts SJC specifically rejected the Massachusetts Appeals Court's reasoning in this case. They said, no, it's not enough. It's not enough to just give the general credibility instruction. It's not enough to just give the reasonable doubt instruction. You have to alert the jury to the specific facts that are at play in assessing eyewitness identification because eyewitness identification is still such a powerful, potentially prejudicial piece of evidence for the jury to hear, and it can really be misused by the jury if it's not properly explained and not properly understood. So counsel, this is an ineffective assistance of counsel claim, so you have to deal with the Strickland prejudice standard. Is that correct? That is what, even if you were to convince us that there was on the performance prong that this was ineffective, in order to prevail, you have to also deal with prejudice. And it's the Strickland prejudice standard that applies. Is that correct? That's correct, yes. It would be essentially could better work have resulted in a different outcome. Okay. And am I correct that the Mass Appellate Court did deal with the question of prejudice? Is that correct? I think they did, yes. Okay. And they cite such things as the sort of odd statements that your client made when he was arrested, which certainly suggested a guilty state of mind. They refer to ballistic evidence. They refer to other individuals who put him at least at the scene. So there's all this other evidence, which I guess the Mass Appeals Court is saying that, well, even if as a matter of performance he should have requested this instruction, there was no prejudice in the failure of that. What's wrong with that analysis? Well, the primary thing that's wrong with it is that none of the evidence that the court, you know, it's trying to use the language from Navarro and say, oh, because Navarro was a case where they said it was error not to give this instruction, but then Navarro says, but the error wasn't prejudicial. And in Navarro they said the error wasn't prejudicial because essentially the evidence against the defendant was overwhelming. And in that case it was very different because just mere presence at the scene in Navarro, which was a robbery case, was sort of coextensive with guilt, right? In this case the whole point was, and this is why I started the argument this way, Mr. Jordan was just one of several people who was there, only two of whom engaged in the shooting. And all of the other evidence that the appeals court cited to went only to the fact that he was present, right? The statements that he made to the police just suggested that he was there. It didn't suggest that he was one of the shooters. In fact, he denied it. There was no forensic or ballistic evidence that tied Mr. Jordan to any of the guns, and to the extent that the appeals court said that, it was plainly wrong. There just wasn't. And they sort of repeat this argument over and over again that there was plenty of other evidence that he was involved, but there wasn't. It was only evidence that he was one of seven men, two of whom engaged in the shooting. That was it. The only evidence that connected him to actually being a shooter was the evidence from Nawari or Lewis, where the identification was made in these extraordinarily unreliable circumstances, and because of that it was really important for the jury to hear how they should assess that. And because of the potential prejudice that juries, or the sort of powerful prejudicial effect of eyewitness identification that we're all very familiar with now, but jurors aren't, it really was necessary for them to hear that. And then the other piece of it, which I've run out of time to talk about, is the failure to allow the cross-examination on bias, which was the other part of the Commonwealth's case. So in the whole we have this very weak identification case. The only two pieces of evidence are incredibly weak identification, where there's no jury instruction given on the real heart of the matter, and two, the Commonwealth's second star witness, who's the bus driver who says he sees Jordan with a gun afterwards, there's no ability to cross-examine him on this very sort of personal bias that he conceded, motivated him to provide evidence against people who were Mr. Jordan's associates later. You'll have time on rebuttal for that argument. Yes, so thank you very much. Thank you, counsel. At this time, counsel for the Commonwealth, please introduce yourself on the record to begin. Good morning. Assistant Attorney General Eva Badway for the respondent. May it please the court. This court should affirm the denial of habeas relief. I want to focus the court's attention on the ineffective assistance of counsel claim. Specifically, the Massachusetts appeals court rejected the claim that counsel was ineffective for failing to request an identification instruction. And here, the Massachusetts appeals court assumed the performance prong of Strickland, and they went straight to the prejudice prong in rejecting it. And first, I'd like to point the court to the United States Supreme Court case Burgess v. Tompkins, where if there's ample evidence of the defendant's guilt and the jury was instructed to assess the credibility of the prosecution witness, then there is no ineffective assistance of counsel. Counsel, what does the record tell us about this ballistics evidence that the Massachusetts appeals court relied upon? I didn't find any elaboration in the briefs as to what that is. What does the record tell us about what that is? Your Honor, I would refer the court to the three technicians from the Plymouth County Sheriff's Office who testified to the bullets that were found after the violent incident that occurred outside of this after-hours party. They weren't found immediately after the violent altercation where one man was left paralyzed and two other men were shot. These bullets were found afterwards, and they were right next to where the victims were found. How does that help to identify Mr. Jordan as the shooter? Well, it goes to the circumstances of the evening. As to identifying Jordan as the shooter, it's interesting that the petitioner is trying to discredit No Warrior Lewis' hospital ID. He's saying that the identification was weak. After he was shot, there's testimony that he did not want to participate in the investigation or cooperate with the police. He was in his hospital bed when two police officers came and they showed him photos, and he identified him as the shooter. If you want to say that there was no instruction about the identification, I'd also like to point the court to the actual instructions where the trial judge says that you have to consider, among other things, the witness's frankness or evasiveness, the reasonableness of the testimony, and the opportunity that the witness had to observe what it is that they're telling you. So this was the actual instruction, and I point the court to the Record Appendix 1A at 796. But that's just the general credibility instruction that's given in every case. Well, yes, Your Honor, that is the general. But you have to remember, the time that this case was tried was in 2013, and that the whole idea about missing witness and identification instructions, that law has evolved over time, absolutely. But we are deferring to the factual findings of the Massachusetts Appeals Court as to the ballistics evidence, as to the identification, because we are here on habeas review, and this petitioner has cited no evidence at all to rebut the presumption of correctness. You cite again the ballistic evidence, but I didn't understand your answer to Judge Lopez as to how the bullets aided the identification of the defendant. Well, at the time, Your Honor, you have to understand, we are in 2002. The technology and stuff is very different than what you would be looking at now in 2025. And at the time, what they did is, there are three different employees of the Plymouth Sheriff's Office who testify to how they went to the scene and what they looked for. So skip all that. What was there about the bullets that linked the shooting to the defendant? So there was testimony by the bus driver about the kind of gun this petitioner had when he got on the bus. And the bus driver knew the petitioner before, and this goes to the cross-examination part, Your Honor. No, I'm staying with it. The Mass SJC referred to ballistics. Right, so the Massachusetts Appeals Court. What ballistics evidence linked the defendant to the shooting? So there were three witnesses who testified about the bullets that were found at the scene of the crime. And then there was a bus driver who testified about the kind of gun that this petitioner had when he stopped the bus to get back on the bus. And so it was up for the jury to decide whether those bullets were linked to the kind of gun that this petitioner had. The jurors were ballistics experts? Was there testimony that the bullets were linked to the gun that Wilson said the petitioner was carrying when he got on the bus? Your Honor, I can't give you the exact citation to the bullets evidence that was linked to that. But there was testimony about the kind of gun that the petitioner had, and that there was testimony about the bullets that were found at the scene of the crime. And I point the court to remember, this is 2002, and things were done a little bit differently. Right, but even then, I think Judge Keanu's point is, who's the ballistics expert? It can't be the jury. No, no, the jury was not the ballistics expert. There was a state trooper. It sounds like no witness said these bullets likely came from that gun. No, Your Honor, I can't give you the exact citation. I will write a letter to tell you if I can find exactly where it says what bullets came from what gun. So you're saying one of the witnesses did say these bullets that we found likely came from the gun that the bus driver identified? Yes, there were three different ballistics. Yes, I am saying that. Counsel, can I ask, opposing counsel didn't get to talk much at all about the limitations on the cross-examination of Mr. Wilson, but isn't it fair to say that the Mass Appellate Court got it entirely wrong as to what the theory of the defense was, as to why they should be able to explore in detail why Wilson would be so eager to implicate Jordan in this crime. Their point is that because his brother was murdered just before he testified before the grand jury, he was very upset by the criminal culture generally in Brockton, and it wasn't as if he thought that Jordan was implicated in the murder of his brother or that Jordan's friends were. He just thought he had to do something to basically clean up Brockton. I mean, that was the theory, and the court completely misunderstood that. Your Honor, if I may respectfully disagree. The witness, in fact, testified that the federal investigations carried out years after the petitioner's actions did not relate in any way nor to any person involved in the instant case. And I cite the Record Appendix 1A, specifically page 390. So no, Your Honor, the Massachusetts Appeals Court did not get it wrong at all. Here, this petitioner was allowed to cross-examine this witness about his participation with the federal government, buying guns, receiving money, and being relocated. The Massachusetts Appeals Court reasonably rejected the petitioner's claim that he was not allowed to cross-examine this petitioner, the witness, rather. He cross-examined the witness, and the limit was that he was not allowed to cross-examine him. But the court said there was no basis in the record for linking Jordan or any of his associates to the murder of his brother. The defense never contended that there was. That was not the rationale for wanting to cross-examine Wilson about his eager, aggressive efforts on behalf of the government. That was never their theory. And yet the Massachusetts Appeals Court imputed that theory to the defense as a way of defending the trial court's ruling. That was just wrong. No, Your Honor, I'm sorry. I respectfully disagree with you. I think what happened here is this petitioner keeps changing the theory as he goes from the trial court to the appeals court. And it's always been pure speculation. The witness did testify. The witness was cross-examined, and that information was before the jury. And anything else is pure speculation. And for that reason, I urge you to affirm the denial of habeas relief. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a one-minute rebuttal. Ben Brooks for Mr. Jordan. So just to start on that last point, yes, you have the argument exactly correct, Judge Lippez. They misunderstood the argument. They were always trying to say, hey, you can't show as a factual matter that there was any connection between Mr. Jordan and Jerry L. Wilson's brother's murder. So this bias claim is totally speculative. But that's not at all what it was. It was exactly how you articulated it, and the court got that wrong. And they used that as a reason to deny the opportunity to cross. The trial counsel requested a voir dire of Mr. Wilson. He pressed for information about his federal activity because he had a suspicion that some of his friends had been caught up in Mr. Wilson's federal activity. But he was never permitted to get any of that out. And so there is this sort of confluence of what was just a restriction on cross and what was not this late disclosure of the other material. But in any event, the appeals court got it totally wrong on that point. Wilson had given his story twice before the trial, once to the grand jury and once to one of the detectives. We know that the brothers' shooting occurred just a couple of weeks before the grand jury testimony. Right. But does the record reflect the chronology of when the detective, he gave his story to the detective? Was that before or after the brothers' shooting? I couldn't find an answer to that. I don't think we know. And if we don't know, then how does that bear in our analysis of who has a burden? Because if he gave that testimony to the officer before the shooting, it kind of debunks any claim that the testimony was made up because of the shooting. Right. Well, I mean, there are two things. One is we don't know. And, I mean, I can say that there's no police report that documents Detective Presampieri's initial conversation with Jerry Wilson, at least in the file that I have reviewed. And one of the things that we did in this case was to file a motion for discovery for that that was denied. And then the second part is that even if there was, like his grand jury testimony has, you know, incriminating statements against Mr. Jordan, and even if his original police statement did, it gets more incriminating as he testifies at trial. And that could still be fertile grounds for exposing a bias. Because I think there are cases that say specifically even if the original statement was given before the bias developed, if the testimony changes and becomes more incriminating, that leaves room for cross-examination on bias. And that would be true here, too. I just was going to point out that it's at page 36 on the brief where the case I cited, Wright v. Marshall, First Circuit case, where they consider on the merits the failure to request a jury instruction that would have been allowed under state law on a habeas review. Thank you very much. I appreciate your time. Thank you, counsel. That concludes argument in this case.